Good morning, Your Honors. Katherine Young from the Federal Public Defender's Office for the Appellant, Nereida Huscher. And I'd like to reserve some few minutes of my time for rebuttal, if I may. In this case, Your Honors, Ms. Huscher challenges the finding that she had violated the conditions of her supervised release in Allegation 4 on the ground that Allegation 4 did not allege a violation of conditions of her supervised release. The government's brief does not dispute that Allegation 4 did not allege a violation of her supervised release. And the government's brief does not dispute that the probation officer violated the conditions of supervision. Instead, the government argues that Ms. Huscher waived her rights. But the government's authority requires a knowing and voluntary waiver. The government's authority, Farrell, cites two cases addressed in our brief in which a defendant's admission to violations of supervised release were overturned because of a lack of knowing and voluntary waiver. Well, first off, you didn't challenge Count 4 in the district court, right? That's correct, Your Honor. So is it a plain error review? Yes, Your Honor. And then what's your best authority for allowing a challenge to a legal sufficiency of a criminal account on appeal when it's not challenged in the district court? Well, the two cases that we cited, the Correa and the LeBlanc case, in both of those cases, the defendant admitted the violation and it was overturned on appeal because they found a lack of knowing and voluntary waiver. And in this case, no one told Ms. Huscher this was not a violation of the conditions of supervision, that, in fact, the probation officer had violated it. And she admitted other violations, too, right? That's correct. And this particular — I mean, so part of this, I look at it and I go, you know, the saying, are you making a federal case out of this that — so, you know, what's your best argument that an 11-month sentence is unreasonable? Well, I think, Your Honor — Poor Ms. Huscher, you know, had, you know, not a terrible person, but a terribly addicted person that really struggled. No, you're right, Your Honor. There are three allegations that in this section of the brief are not challenging. We're just saying that the fourth is legally invalid and needs to be stricken. And then our argument would be that because it was part of a sentencing package that became unbundled, the sentence also needs to be readdressed. But in this particular — Well, if we look at the comments of the sentencing judge — I think it was Judge Wilkes, wasn't it? Anyway, she doesn't seem to have relied very much, if at all, on this allegation that you're challenging, right? She went into the whole history of this — unfortunate that, you know, the sentencing was maybe largely based on the other violations. I think the court doesn't separate out the allegations. And so we're claiming that this particular allegation is legally insufficient and invalid and must be stricken, and therefore we're arguing that the sentencing should be redone. No, but there are cases that say that can be done, right? Yes. In other words, as Judge Callahan said, that overall, you know, it's easy to conclude that the sentence is reasonable, and there's ample basis to support it. Isn't that the end of the inquiry? Well, I think there's a case cited in our brief in which this court has held that if there's a sentencing package that includes numerous counts and one of those counts is invalidated, the package becomes unbundled, and therefore the sentencing needs to be revisited. Well, we sort of all know what happened here, that when she went to this — you know, she agreed to go to a program as opposed to going to jail when she knew she was messing up, and I think she had a probation officer that was bending over backwards to try to make it work, and she and her lawyer — you know, I mean, that's human nature, when you say, well, do you want to go to jail or do you want to go to a program? Well, everyone says they want to go to a program, and that even — you know, but you're saying that the probation officer didn't have the authority, but she and her counsel agreed to it because that she had a dirty test. And at that point, she was in the Southern District of California, and her attorney in that case agreed to a modification, which required attorney's agreement any time she was sent to inpatient treatment. A year and a half later, she's in the Central District. Jurisdiction has been transferred, and the probation — she has another dirty test.  And so our problem here is that the probation officer did not involve the attorney, as she was required to under the terms of supervision, didn't seek court approval as she was required to under this Court's authority in Esparza, and had she done that, Ms. Husher would have had the assistance of the attorney or the court in getting into a program, because the problem here wasn't that she refused to go. It was that she tried over and over again. She didn't have — her insurance wouldn't be approved by a program. She couldn't get her medication. They needed two months of medication, and she needed to go to another one. So she tried, but she herself was unable to do it. And the probation officer didn't help her. When Ms. Husher said, I can't — there's a program that will admit me, but I need 60 days of medication, and my insurance company won't provide me with it, the probation officer didn't intervene. She just called up the program nine days later. The program said, well, we really only require 30 days. And the probation officer didn't see if anybody could provide 30 days of medication, just violated Ms. Husher. Well, doesn't her mother — I mean, this woman, your client's in her 50s, and I guess her mother just said, hey, what am I supposed to do? I've tried to — you know, at what point do I get to not be a mom anymore? But all of us that are mothers know that the answer is you never get to step away from being a mother, however old your children are. But, I mean, it's a sad case, but it's hard to see that there's really — there would — now, is she in custody right now? She is in custody. So when is she scheduled to get out? January 3rd. Okay. Soon. Soon, yes, soon. So what is it that you'd like us to do for her? Well, I think that — my request is that Allegation 4 should be stricken because I think it's not a violation of supervised release, and she shouldn't have a violation on her record that's not a violation. And then I think that there needs to be a resentencing because then the package becomes unbundled. It's not a violation because her attorney wasn't consulted? Because the attorney wasn't — the probation officer did not obtain the agreement of her attorney or seek approval of the court. So the probation officer doesn't have the ability or the authority to say to someone, go unilaterally, go to inpatient care or I'm going to send you to prison. And that's what happened in this case. Had the attorney been involved, had the court been involved, it would have been handled more ethically. The other three violations that were found present were for, what, two for dirty tests? Two dirty tests and I think three or four failures to report, Your Honor. Okay. And now if there — I think I have a few minutes left, so unless there are any further questions, I'll reserve the remainder of my time. Well, she's been having problems. I'm sorry, Your Honor? She's been having these problems most of her life. Yes. Well, I think there was in the PSR, she did have a long — all her children testified to the fact that she was a very loving and supportive mother who worked hard for them all their lives. And so I think she got into a period of her life where she fell into drug addiction. But for a long time in her life, according to the PSR, she was a very hardworking and contributing member of society. And so she did seek the inpatient care. She just didn't want to be violated because nobody would help her get it. And she couldn't get it on her own. Thank you. I'll reserve the remainder of my time. Thank you very much. Good morning, Your Honors. May it please the Court, Stephen Merrill for the United States. Your Honors, the District Court did not err, let alone plainly err, in accepting the defendant's admission to four violations of supervised release where the court appointed counsel to the defendant. And I think it's important here to note this isn't just any counsel. This is the same counsel that had represented defendant less than a year prior in a supervised release violation where the court had fashioned an order that she would do intensive outpatient care and enter into the RRC. Also, where the court advised the defendant of the nature of the allegations against her, advised the defendant of the consequences of her admissions, advised the defendant of her right to a full evidentiary hearing as to the allegations against her, and where the defendant waived those rights along with counsel and agreed and admitted that there was a factual basis along with her counsel for the allegations against her. But there are cases that support the notion that a waiver is not knowing if it turns out, you know, the charge is invalid, right? I would agree with that, Your Honor. But that issue, again, was not addressed at the District Court. And I believe that's a separate issue that isn't appropriately before this court, whether or not allegations were. You say it's not before this court appropriate? I would argue that it's not appropriately before this court. Because? Because, Your Honor, it was never raised at the District Court. There was never contested at the District Court. There is such a rule as a plain error, right, in criminal cases. There is, Your Honor. So under that rule, can't the criminal defendant raise an issue on appeal that was not raised in the trial court, but the scope of review is more deferential? In other words, it permits the issue to be raised. Your Honor, I believe so. But as far as this particular issue, contesting this issue, all the cases, well, there's only one case, and that's the Esparza case that was cited by defense, where the court held that a condition where a judge allows a probation officer, and in that case it was a mental health treatment facility. And that case cited government statutes that allow for mental health commitment. In this case, those facts don't exist. The judge fashioned an order that required the consultation with defendant, her agreement, and the agreement of defense counsel before probation could order that treatment for the probationer. And so if the court does want to address that issue, we just believe that it doesn't apply in this case, that there's no evidence. Because there was no evidentiary hearing at the District Court level, there's no discussion as to whether or not that condition was complied with. The government further argues that the district... Well, what does the probation officer have to say about that lack of consultation with defense counsel? Your Honor, there's very little in the record here... But that's required by the order. It is required by the order. But again, I'd highlight... What do we do about that? Excuse me, Your Honor? What do we do about that, then? Well, Your Honor, again, I... There was a violation of the court's order. Yeah, I think, again, that would require a full evidentiary hearing at the District Court. Here we have an admission. And it's important, as you read through the record, when it came to allegation number four, there was a pause in the proceedings where the defendant raised a question, and the judge asked, Do you want to consult with your attorney? Do you want some time? And time was given for her to consult with her attorney. She came back. She was re-advised. And she says, I'm ready to admit that allegation number four. Again, this is the same attorney that represented her back in 2014, less than a year prior, when she was ordered into intensive outpatient treatment into the RRC. And this attorney, in her comments to the court, said, I believe the court, I believe her probation officer have done everything that they can. They've done all the right things in this case. So there's no evidence in the record that that specific requirement wasn't complied with. Where was her mother's statement exactly? Was the mother at the hearing? Or how did that come in? That's in the violation report, Your Honor. Okay. So the probation officer talked to the mother. Correct, Your Honor. And she worked, from my understanding of reading the violation report, it appears she worked closely with the mother. Because there was discussion about the mother helping with insurance or helping to pay for a treatment program. Regarding the sentence, the appellant raises procedural errors and also a substantive reasonableness error. And again, we think the record is clear here, Your Honor, that there were no procedural errors as far as imposing the sentence. And that this court has only ever once found that a guideline sentence was unreasonable. And so the sentence here was reasonable and the sentence should stand. And the government would ask that the district court's orders be affirmed. Well, okay. But there was a violation of the court's order by the probation officer. Your Honor, that again, it's not clear. There was never a hearing at the district court. What? There was never a hearing at the district court. There was never testimony offered by the probation officer. From the violation report record, I agree. There is no record in there where the probation officer said, I contacted the defense attorney and did X. But that issue was never addressed between the defense attorney, probation officer at the district court level. Because there was not an issue in the district court? At all. So what would be the problem with sending it back for a hearing on that? Your Honor, we would just argue that that wouldn't be appropriate. She admitted. She gave a full, voluntary, knowledgeable admission to that allegation. And now she essentially wants a do-over. And we just don't think that there is precedent for a do-over in this case, Your Honor. So what is your answer? We just don't think it's appropriate to send it back. Or there's any reason to send it back. You don't think it's appropriate or any reason? Correct. Even though there's been a flat-out violation of the court's order? Well, Your Honor, we would just disagree with that, that there was a flat-out violation or that there's anything in the record that shows that there was a flat-out violation. So we have a deficiency in the record? Correct. Because the defendant waived her right to any type of evidentiary hearing and said, I want to admit these violations. Does the district court have any sort of a diversionary program for people who are addicted? Your Honor, in situations of supervised release, and I think from the record in this case, there's a number of programs from the MRT program to the RRC program to the intensive outpatient care program to the in-house drug treatment programs. The probation officer gave the defendant in this case a long list, as she describes, of potential treatment options, including the Gibson House, which was right down the street from the probation office, which was free, and she said that there were beds available. There were what? There were beds available for her at that time. They were available? That's what. Not available. Yeah, speak up. No, I'm sorry. Either you speak up or I'll turn up my hearing aid. I apologize, Your Honor. The probation officer indicated in her violation report that when she contacted the Gibson House, in the violation report on page 2, on December 2, 2014, the probation officer contacted the defendant. The defendant indicated she was working with Salvation Army, which is a free program out in Riverside County, or Salvation Army, residential drug treatment facility. Did she work for the Salvation Army? No, no, she was trying to get into the Salvation Army. Trying to get in. What program is that? It's a residential drug treatment facility. Where? I believe it's in Riverside County. I believe it's in Paris, California. But the probation officer also provided her with an extensive list of residential drug treatment programs, as well as a free residential drug treatment program with available beds named the Gibson House, and this was on December 2, 2014, according to the probation officer's report. Well, over the years, I'll say, she's tried a number of programs, right? Or, you know, a number of programs have tried to assist her. Yes, and that's highlighted in the probation officer's report, where the probation officer, again, just simply says, look, we've done everything we can to help this defendant. Where she does the best was in the RRC program or when she's in custody, and that's where she includes a quote from her mother, essentially saying, I don't know what else I can do. And essentially, the probation officer bent over backwards to help the defendant in this case. Well, there are a lot of good residential drug treatment programs out there. You know I've set up a lot of those programs. They're highly successful, but it's not easy to get people to go in. True, Your Honor. So it takes a little, oh, you've got to be introduced to it. They've got to want to go in there. There's a real resistance until they finally realize this is what they have to do. So it all depends on how it's presented to them. So I don't know what this probation officer's experience is. Your Honor, I think, again, the violation report in this case is You just don't say, well, it's available, it's available. It doesn't work that way. The violation report in this case is relatively thorough and lengthy. It's one of the more detailed ones I've seen, where it appears this probation officer, again, would go to her house to meet with her, had gone to the community to meet with her. She spent roughly two months just working with her, working with her, working with her, giving her different options. She even, when the defendant had problems with a particular lab that was testing her or complained about the lab, the probation officer said, okay, well, I'll get you into a different lab to test. These probation officers are What did she have left hanging over her head? I mean, let's just assume that it were vacated. If it went back, I mean, she's basically almost done with her sentence, but could the court then order her to residential treatment? Is there any authority still hanging over her head? My recollection and understanding was that supervisor Elise was terminated upon completion of her sentence. So I don't know that the court, I suppose that this court undid everything that was done. So what happens to her now? She finishes her sentence, oh, a few days, about January the 3rd. Then where is she going to go? She's free, Your Honor. She does obviously have a family and a mother that still cares about her. I would assume children, but she's a free citizen at that point. So she has no supervision. Correct. No program she's going to go into. Not to my knowledge. There's discussion in the violation report as to having insurance and her mother being willing to help her. She could always voluntarily, but you're saying as the part of what the court has left she couldn't. Correct. The government has no more authority over her. She's been in this cycle for how long? She's in her 50s, Your Honor. This is her second time on supervised release. So it's been a number of years, Your Honor. How long has she been addicted? That I don't know exactly, but I would guess a number of years, Your Honor. All right. Thank you. Thank you, Your Honor. Good morning, Your Honors. What is your solution to this? Vacate Allegation 4. What? Vacate Allegation 4. As to the rest of it, I know Judge DeShima mentioned that she had had a number of programs, but she's never had inpatient drug treatment, and she thought that might be the panacea. That might be the program that would work for her. I think everyone has to find something that will work for them. Hopefully, she will be able to. But she'd have to do it on her own. She would have to do it on her own now. So I want to address a few things. One is the issue of whether or not the record shows that the probation officer complied with her obligations to notify defense counsel. And Mr. Merrill just characterized the probation officer's violation report as relatively thorough and lengthy. So if she had talked with Ms. Husher's lawyer, you know it would be in there, and it's not. She did not contact the lawyer. She was required to do. Mr. Merrill also talked about all the rights of which Ms. Husher was advised, but she was not advised of her right not to be violated for something that's not a violation of the terms of her supervision. Well, she had a lawyer. We don't know what he said. Well, in the two cases cited in the brief, the CREA. I mean, what if she said to her lawyer, you know, I don't want to go to a program. Just send me to jail, and let's just get this over with. I want to get off supervised release. What if she said that to him? Well, I think the record shows she really wanted to get into a program. She really tried hard. She thought it would help her, but she just couldn't do it on her own. And I just wanted to point out that in the CREA and LeBlanc cases, they looked at the record to see whether or not the defendant had knowingly and voluntarily waived her rights. And here, if you look at it, when she's asked to admit to the violation, first of all, she says, I have a question, but I admit it. And then the court says, say it again. And she says, I have arguments with that, but can I deny it? So the allegation itself was having been directed to participate in a residential drug treatment program approved by the USPO, you failed to enter a program. On its face, she admitted it because it's true. She was directed by the PO, and she failed to do it. Our argument is that's not a violation of supervision because the PO can't unilaterally order her to go to drug treatment. And had the PO complied with the PO's obligations, she would have had the assistance she needed to get into a program, which is what she really needed to do. And the last thing I want to respond to is the prosecutor cited from the violation court. Let me ask you, when she finishes on June the 3rd and she's released, what is your role going to be after that? Our office's role?  I don't know that we have any role, Your Honor. Say sayonara. That's it. No, I think if she wanted help, we would try to provide it to her, find her a program that would help her. But you're not required to. You don't represent her anymore, right? No, but I think we have resources in our office to try to find support systems for people when they need them for our clients. But there's just one thing I wanted to touch on that the prosecutor was quoting from. Oh, you've done that in other cases. I think we have, I'm not familiar with programs, but I think we have people in our office that are familiar with programs so that they can assist clients in finding the appropriate program. The probation officer talked about the, I mean, the prosecutor, I'm sorry, talked about the probation officer's violation report, page 2, where it said that the probation officer gave Ms. Husher the name of Gibson House. But Ms. Husher, in fact, went to Gibson House, and that was the program that required either 60 or 30 days of medication, which she couldn't afford. So that's why she couldn't get into Gibson House. And unless there are any further questions. You know, the Superior Court's got some good programs. Judge Tynan, do you know him? I've heard of him, Your Honor. Well, why don't you go over and knock on his door and meet him? You know, where he presides over this type of court and maintains contact with all these people. It was done up in San Jose by another wonderful judge. It went down in Orange County. I appreciate your compassion, Your Honor, and I hope my client can get the help she needs, because the PSR shows that at one point she was a very hardworking mother, a contributing member of society, and I hope she can get the help she needs. I appreciate your compassion. Thank you very much. All right.
judges: Pregerson, Tashima, Callahan